As we approach lunchtime, it's appropriate that our next case is Princeton Vanguard v. Frito-Lay, 2014-15-17. We'll hear from Mr. Bernstein, involving pretzel crisps. Thank you, Your Honor. What samples, I gather? I wish we could have brought samples to the court, but I know that it's hard to bring in exhibits. They wouldn't be crisp. No, they would be quite crisp. I hope Your Honor's all have enjoyed each of our party's products. I'm on a diet, so I couldn't have partaken anyway. Well, I'd like to reserve five minutes, if I may, Your Honor. Nearly 20 years ago, Judge Rich, writing for this court, set a very clear standard. In Marvin Ginn, Judge Rich explained that in deciding whether a mark is generic, he said the, quote, critical issue is whether the public understands the mark to refer to the genus of goods or, of course, to it being a brand name. And a decade later, in American Fertility, Chief Judge Michel explained further that the, quote, correct legal test is to consider the mark as a whole. The authors of opinions, of course, are writing for the court. Yes, of course. Not necessarily for themselves. No, I agree. And in both cases, these are unanimous decisions, and I think they're both seminal decisions when it comes to the question of what is a generic mark or not. And in American Fertility, the court goes on to explain that the reason we need to look at the mark as a whole is that the whole may be greater than the sum of its parts. And that's a concept that we've seen in many cases since then. And I think there are two lessons that we can draw from this court's two seminal cases in this area. The first is that when it comes to assessing whether a mark is generic, what is completely key is the public's perception. It doesn't matter what I think or, candidly, what Your Honor thinks or an individual administrative law judge at the TQB. But there were surveys on both sides here that the board wasn't persuaded by. I completely disagree with that, Your Honor. There were two surveys. The survey by Frito-Lay's expert, Dr. Simonson, was criticized expressly by the board, and the board says it's entitled to very little weight. And that's because Dr. Simonson's survey failed to follow one of the key tests in genericism surveys, which is you first test whether people understand the difference between a brand name and a generic term before you go on to ask them the key questions. And the board goes on to criticize the survey and to expressly say it's entitled to very little weight. Dr. Jay also submitted a survey on our behalf, Your Honor, and the board does not indicate that it criticized her survey. The board doesn't indicate that it accepted any of the weaknesses that Frito-Lay expressed. And Dr. Jay's survey – and Dr. Jay, by the way, wrote the leading article on genericism surveys. I think she's one of the foremost experts in this area. She concluded that the majority of consumers, when they're asked about pretzel crisps, identify it as a brand name, not as a generic term. The board said, we consider the entirety of the record, including the surveys, but we give controlling evidence to the dictionary definitions, evidence of use by the public, by the media, by the third parties, and by defendant itself. Actually, Your Honor, I think the board says something else, which is telling. And this is on page 828. The board says it considers the surveys, but Your Honor, didn't include this parenthetical the board included, which is at the bottom of page 828 of the record. About the surveys, they say, which in any event arrive at different conclusions. Now, first of all, as a matter of fact, I think that's wrong. Because the Dr. Simonson survey basically finds a 50-50 split. He didn't find that the majority of people understand pretzel crisps to be a generic term. But regardless of that, and so I think the surveys at one level could be seen as consistent, although Dr. Jay, of course, finds a higher percentage of people who believe it to be. It's a finding of fact, and we give substantial evidence, deference to the board. Yeah, and I want to get to that in just a moment. But on the surveys, for the board to say that it is going to give controlling weight to the non-survey evidence because the surveys reach different conclusions, that is incorrect when the board expressly rejects Dr. Simonson's survey and does not reject Dr. Jay's survey. You shouldn't consider two surveys and say, oh, they come to different conclusions, let me disregard them both, when one of them has been rejected and the other has not. And then with respect to the non-survey evidence, candidly, Your Honor, the substantial evidence does not support a finding that the mark was generic. So let's look at the factors that you just identified. So what you're arguing is not only did they apply, in your view, the wrong legal standard, but even if they hadn't, they've made clearly erroneous factual findings with respect to their description of the evidence. That is correct, Your Honor, and I very much want to get to the legal standard. But before I do, let me address Judge Lori's question about the non-survey evidence. I agree with you that those forms of evidence are critically important. So the board says, well, they gave controlling weight to the dictionary definitions. There is no dictionary definition of pretzel crisps that says it is a generic term describing these products. The only thing in the record, and the record is replete with evidence that no dictionary has pretzel crisps as a term. The one encyclopedia that does is Wikipedia, and it identifies it as a brand. The board says it gives evidence to use by the public. We submitted evidence of media statements showing that 86% of the articles that were gathered and looked at, all the articles that both parties could find, 86% of them identified pretzel crisps as a brand, not as a generic term. Frito-Lay takes quibbles with some of those, but candidly, those quibbles don't hold up. Many of those references work to license terms, but when a licensee uses pretzel crisps because we've licensed them to do it, that, of course, is a use that inures to our benefit. That's a brand use. And they say that some of the references include the word pretzel crisps in the news reports in lowercase rather than in uppercase. But it's clear from the context of the articles, and this is all explained in our briefs, that in every one of those cases, they were referring to our brand. But even if we credited those, we're still looking at well over two-thirds of all of the articles treat pretzel crisps as a brand name. The Google search, 98% of the top 100 references all refer to pretzel crisps as a brand name. So if we look at the media use and the public use, I actually don't believe that the finding that the mark is a generic term is supported by substantial evidence. And we also look to a delirious industry use, and that's important too. Many competitors in the industry specifically licensed the right to use the term pretzel crisps from us. And if they licensed the right, that's an acknowledgment of our brand rights. Indeed, even Frito-Lay's Sabra subsidiary licensed the right to use pretzel crisps. They sold a Sabra hummus product that included a packet of hummus and a little packet of pretzel crisps that you could dip them in, and on the package itself, it identifies pretzel crisps as our brand name. Again, not being used in a generic way. And on top of that, we have experts, four experts submitted their testimony, which was uncontradictive. And they talked about the extensive way in which the pretzel crisp mark is used as a brand name in the industry, and it's not used as a generic term. What is the difference between a compound mark and a phrase? Thank you for that question, Your Honor. So that brings me to the legal test I wanted to bring up. And I think this is an area where, candidly, there's been a lot of confusion in the board's case law on this. The Gould case is the one that brings up this concept of a compound term and allowing you to assess whether a mark is generic based on looking at its constituent parts. And in that case, the court says, if the terms separately are each generic, then that can inform the question of whether the compound is itself generic. But there's an important part of Gould that the board disregarded, and I think Frito-Lay has disregarded, and that is that you only use this test if the combined term provides no additional meaning other than the term separately. And Judge Michel explained in American Fertility, which was after Gould, that even if Gould applies, you still have to consider the mark as a whole. And so the question is, even if you take the term pretzel and the term crisp, and even if the board was correct, I don't agree about crisp, but even if the board was correct, that each of those are generic terms separately, it is crystal clear under this court's case law that the board has to consider the mark as a whole, and they did not do that. Is it the case that in order to have a compound term, you must have a marriage of two words? No, not necessarily. In the Dewa Press case, which Judge O'Malley had, it was a term snap and an exclamation point. And the board, again in that case, improperly dissected the mark and looked at each of those terms separately. That was a case involving descriptiveness, if I recall, rather than genericism, but it's the same test. And this court said that the board got it wrong. You don't dissect the mark. You don't look at them separately. You look at it as a single mark. Now, it may be in some cases, like in Gould, where the mark was screen white, that the combined term doesn't add anything in addition. And indeed, in ex parte cases where there's not much of a record, I can understand why the board might be able to rely on an analysis of the two words and then say, let's consider whether these words have anything in addition combined. But in this case, an inter-parties case with four experts, with multiple parties having testified to the declarations, with two parties who have the financial resources to bring to the board all of the evidence of what this combined term means, in those cases, this shortcut around American fertility and around Martin Gin is wrong. You should not shortcut the analysis of the mark as a whole and look only at the constituent terms. Rather, as Judge Michel said, you can't do a shortcut. Gould doesn't allow a shortcut. You still have to consider the meaning of the mark as a whole. I do have more to say, but I would like to reserve my time, if I may. And I'm happy to answer any questions you have when I come back down. We will reserve it for you, Mr. Barber. May it please the court. Mr. Kastin has told us that when looked at carefully, the board's decision crumbles. You differ, I'm sure. I certainly do, Your Honor. May it please the court. Despite the fact that this court, like every other circuit, considers genericness to be purely a factual issue, Princeton's primary argument on this appeal is that the board applied an incorrect legal standard. And what it's saying is that the board looked solely at the separate words, pretzel and crisps, and failed to consider the combined term pretzel and crisps. Well, if you just read the board's decision, that's not what it did at all. Well, it said in passing that we'll also look at the whole thing, but it didn't really do an analysis of the term as a whole. It discussed those competing surveys, and both competing surveys tested the term pretzel and crisps, and it also cited a number of examples from the record that showed pretzel and crisps being used generically by the media. Let me ask you this first. When we talk about substantial evidence, it doesn't mean that you can cherry-pick some evidence and rely on it. It has to be substantial in the context of all of the evidence, including evidence that cuts against that conclusion, correct? Correct. In this particular case, you've got two surveys, one of which the board says is junk, and the other of which the board doesn't criticize, but then the board discounts them both. Even though both of the surveys actually seem to indicate lack of genericness. Well, Dr. Simonson's survey indicated that only 41 percent of the consumers, well below 50 percent. Equal amounts, right? Equal amounts, but at 41 percent or 18 percent, so they didn't even know of it. And, of course, we disagree with the board for disregarding the Simonson survey. But Dr. J's survey, they also noted some substantial flaws in that survey, and then went on to say that they came to differing conclusions, and we're going to give control and weight to the other evidence in the case. And the other evidence in the case, there's really two of them. But they didn't note substantial flaws. They noted one or two things that the other side criticized, but they did not adopt those criticisms for purposes of discounting that survey the same way they did with respect to the Simonson survey. Well, I agree that they didn't go into as much detail on adopting the criticism, but there was really no other reason to say what the criticism was that Dr. Simonson leveled on Dr. J's survey unless they were giving that some credence. And then they said that they were giving controlling weight to the other evidence because the surveys came to differing conclusions and cited nreighthotels.com. So I think in the context of the entire decision, they were saying both surveys were flawed, and at the very least they were saying in this particular case with all of the other evidence that those are deserving of controlling weight. And the issue here on appeal is whether there's substantial evidence to support the factual findings of the board. And, you know, Mr. Bernstein wants to jump straight to the evidence of using the combined term precipice, and I want to address that too. But before you even get there, the board correctly applied the Gould standard. And the Gould standard, and this goes back before Gould, if you go back to Cummins Engine versus Condon Motors from the CCPA, in that case the CCPA held that the term turbodiesel is generic as a compound term. And if you look at the record in that case. So are you saying we're not supposed to look at the totality of the market? You are supposed to look at it, but you're also supposed to look at the separate terms themselves in a case where it's a compound term like this. That's important. When a company combines two generic terms and... But they discount use of it in any way other than as a total mark. I'm sorry? They have disclaimed the right to mark Kressel or the right to mark Krips. They only want it as a total mark. Right. It's the same thing with turbodiesel. It's the same thing with screen life. And if you look at the record in the turbodiesel case, the CCPA relied on basically two things. One, dictionary definitions of the separate term. There was no dictionary definition of turbodiesel in that case. It was a definition of turbine and the shortened form turbo and diesel. And then the court also looked at a single magazine article, one article, that used the term turbodiesel generically. And the dissent pointed out, and this wasn't... Cummins was an inter partes cancellation proceeding. It was not an ex parte appeal. There was a robust record. There were numerous exhibits. And in fact the dissent pointed out that the term turbodiesel was used as a trademark in almost all of the exhibits. And despite that, because you have a compound term consisting of two dictionary words and there was a single magazine article that combined it generically,  so before you even get to the other evidence of the combined term, you have binding precedence in Cummins and Gould that... So you're telling us that the standard we should employ is that they can point to one piece of evidence that indicates genericism that the whole rest of the record should be ignored? I'm not saying to ignore the record. I'm saying in that particular case, there was one magazine article. In this case, there's much more evidence. It's several pieces of evidence. At least your friend on the other side says the board mischaracterized. Well, in this record, there are over 100 generic references to the combined term pretzel crisps in the media, including such outlets like the Wall Street Journal, CNN, ABC. But they point out that several of those references are mischaracterized and taken out of context. I don't think they were saying those were taken out of context. I think they're saying that there are a lot of other articles that refer to pretzel crisps in terms of Princeton's products. So they're saying if you look at all the articles, two-thirds of the articles refer to pretzel crisps as a brand of Princeton. Well, that's not the issue before the court. The issue is whether there's substantial evidence to support the board's findings. And here, there's certainly substantial evidence that the term pretzel is generic and the term crisps is generic, and that when you combine those two, there's no new meaning. There's nothing incongruous about pretzel crisps. It's not alliterative. It's not rhyming. There's nothing unique about it, and that was the point. Same thing with Scream White. It was the same situation. Same thing with turbodiesel. And so when you have that situation— Your definition of what constitutes a compound mark is whenever it's two words. Whenever it's two generic words, and there's nothing— Well, that presupposes the generic determination. No, the separate words are generic. Okay, but it's two words. So if it's three words, it can't be a compound mark? It may or may not be. In American Fertility, it was Society for Reproductive Medicine. Of course, that includes a prepositional phrase. You're saying the two separate words here are each generic, and the combination of the two of them adds nothing except what the separate components meant. Correct. They don't lose their descriptive meaning. There's nothing incongruous about it. That's what the Gould Court said. There's nothing unique about it. I suppose there might be a case where you combine two generic words, and it's something really unique. It's something very distinctive. That's not the case here. It wasn't the case for Scream White. It wasn't the case for turbodiesel. What about being descriptive? Did the Board deal with descriptiveness? No, the Board's decision is solely on the issue of generic. Then it would have had to have gone to secondary meaning. The Board did not reach that issue because it determined that the mark was generic. What about the number of other cases, like steel building and performance mouthwear, where we said those were phrases, they're not compound terms? Steel building, the Court didn't really say that it was a phrase. In steel building, what the Court said is that the Board misunderstood the genus of the applicant's services. The party there was not just applying to register steelbuilding.com for steel buildings. The genus, the Court said that's what the Board thought, but the applicant was really, it was an elaborate service. It was a highly interactive service to enable users to design uniquely designed buildings. That would seem to go to descriptiveness, not genericism. It was a genericness case, and the Court reversed the genericness finding, but not because they found it a phrase. The only cases I'm aware of where this Court has held that a mark was a phrase and not a compound term, and therefore the Gould analysis didn't apply, was American Fertility, that's Society for Reproductive Medicine, includes a prepositional phrase, and 188 mattress. The Court there said that's more analogous to a phrase because the numeric prefix 888 is not a word. But the Board repeatedly has done that, so performance mouthwear, for instance. Well, I think in those... They said that's a phrase. They did say that one was a phrase, but I think in fairness, Your Honor, in that case, they're sort of giving the applicant the benefit of the doubt. They're saying, well, we'll consider it a phrase, but it's still generic. They found that the mark performance mouthwear is generic under the analysis of a phrase. So when they're given a choice between a compound term and a phrase, sometimes they'll say, okay, we'll consider it as a phrase, and we're giving the applicant the benefit of the doubt here. But it's still generic, even as a phrase. And in fact, the Board here said if you consider pretzel grits as a phrase, it's still generic. And there's substantial evidence in the record that not only the separate terms pretzel and grits are generic, and there's no new meaning when you put them together, so it's generic under the Gould analysis, but also there's substantial evidence in the record that the combined term pretzel grits is a generic term. Again, there's over 100 media articles. There's over 10 generic uses by competitors, and there are numerous generic uses by consumers in blogs and emails to Princeton. And so under both analyses, as a compound term and as a phrase, there's substantial evidence supporting the Board's decision that the mark is generic. If I could go back to your question, Judge O'Malley, about what's the difference between a compound term and a phrase, I think if you look at this Court's decisions and its predecessors' decisions, where it's found a term to be a compound term, you have examples like turbodiesel, screenwipe, gas badge, which is from the Apcor decision that was also cited in the Gould case. Those are situations where you have two separate terms that are generic based on dictionary definitions or used by the applicant, which we have here. The applicant, Princeton, used the term grits generically for many, many years on its packaging and also in emails and contracts and award applications and things like that. So when you have two terms that are generic and you put them together and there's no new meaning that's added, that's what this Court's precedent has said is a compound term. And that's a very important thing. What do you mean by putting the two words together? By marrying the words? They could be put together with no space, but they don't have to be. In fact, Henry Gould said whether they're separate with a space between them or they're put together, it's still generic. And in fact, we think it's even more generic if there's still a space there because it's still recognized as two separate terms. And in fact, the children's DHA case, which you were on, Judge Reyna, there was a space between children's and DHA. And in that case, as you'll recall, the Court looked at and the Board looked at the dictionary definitions of the word child and DHA separately. There wasn't a dictionary definition of children's DHA together. In all the cases you're citing, there seems to be the additional analysis by the Court or the Board in looking whether it considers a mark as a whole. That seems to be missing in this case. I don't see the analysis where the Board went that further step. Because here, I mean, one of the words by itself is generic, but not the other. Well, the Board found that they're both generic and they are. The both were pretzel and crisp. They're both generic.  that the ultimate determination is to look at the mark as a whole. But it said on the way there, on the road there, we can look at the two terms separately. It never did do that. They did that because... Because had we done it, we would have found the same. But it never did do that. Before that, though, they addressed the surveys which did look at the term pretzel crisp together. But they're looking there at whether the words are generic separately. Well, the surveys looked at the term pretzel crisp together. And then the Board also cited a number of examples in the record where pretzel crisp was used generically by the media and by food competitors. It didn't discuss all of them. And there are many more in the record that the Board didn't specifically... So if it's a compound term, you don't... Once you find the two words are generic, you don't have to do anything else. But if it's a phrase, then you do have to do a separate analysis, don't you? That's to the public understanding of the mark as a whole. The court's precedent seems to suggest, and this is the American Phillips Fertility case, that if it's a phrase and not a compound term, then it's improper to look at whether each term separately is generic. But where it's a compound term, like this one is, and as the Board found, then if both words are generic and no new meaning is added when they're together, that constitutes clear and convincing evidence that the mark as a whole is generic. So in that situation, the applicant starts out in a very deep hole on genericness before you even look at the evidence of the combined term. But here we have both. The separate terms are generic, there's nothing new added, so it's generic under the Gould Turbodiesel standard. But there's also substantial evidence in the record that the combined term pretzel crisp is generic, and the Board did discuss some of that evidence. Not all of it, but it did discuss some. Thank you, Mr. Barber. Mr. Bernstein has a little more than four minutes. Thank you, Your Honor. This case presents this Court with an opportunity to clarify what I think has become a very confused doctrine. Your Honors, I'm struggling with the question of how do we tell whether a mark is a compound or is a phrase. And I agree, the case law provides very little guidance on this. But I actually think that we're focused in a bit on the wrong question, because there's not two different tests. And American fertility is the key case to look at on this. In American fertility... In American fertility, it's quite different. Here you have pretzel. Pretzel is generic and crisp is generic, but American isn't. It's quite a different story. And I don't understand why it's so difficult to understand what a compound term is. It's simply the combination of two, maybe more, terms. Respectfully, Your Honor, I think it is more difficult, and certainly when we litigate these issues in the TTAB, where I am frequently, it is quite confusing to deal with the TTAB on whether it's a compound or a phrase. Certainly, a longer term... What should be the test? Even if you look at Gould, the test should not be, is it one test or the other? I think the Board is wrong when it says that. American fertility says Gould is not a shortcut. The test is what does the mark mean as a whole? And as Judge Reyna, I think, has seen, you can look in this decision and you will struggle to find a place where the Board really addresses what the mark means as a whole. But you can look at the components to see what the mark as a whole means. Gould says that you can look at them as a first step, but the second step is key and the Board didn't do it. The second step is, and when you combine those two terms, is the meaning exactly the same or could there be any different meaning? So, when Gould does that, it expresses that test with respect to a compound term and not a phrase. Yes. And so, if you say... Because when you compound words, as Judge Rory said, you get two words or three words and you put them together, that doesn't change the words at all. Sometimes it does, sometimes it doesn't. Well, the principle crisp was applied here to a product that wasn't crisp. Then you could say it was changed by the combination. Well, then we'd probably have a false advertisement as well. But here's the key thing. The key thing, Your Honours, is whether you want to look at it as a compound or a phrase, either way, you have to consider whether the combined mark, the mark as a whole, means the same thing as the constituent part in isolation or whether it means something different. And the Board fails to assess whether the combined term pretzel crisps has some meaning separate from the meaning of its constituent words in isolation. The best evidence, in my view, of what the combined meaning is, is the surveys. I've already addressed those. I disagree respectfully with Mr. Barber when he says a few things. I disagree that there were ten uses by competitors of pretzel crisps. It is not true. I agree that it is important to prevent the registration of generic terms because we don't want to grant monopolies in generic terms. None of our competitors need to use pretzel crisps. All of our competitors sell other products. The one competitor that ever used pretzel crisps was Kraft with a Ritz product, and when we contacted them, they agreed to take a license and they agreed to discontinue the use. Frito-Lay itself has products called rolled gold pretzel waves and rolled gold pretzel chips. We don't object to those. Our competitors aren't being stopped from selling their pretzel cracker products in competition with us. And I disagree that there are 100 media uses of pretzel crisps generically. It's all in the record, but I would submit that many of those were mischaracterized, and your honors have the record. You can look at that. And I disagree with the notion that we've ever used pretzel crisps generically. My client has never once referred to the term pretzel crisps generically. We may certainly have used the word pretzel and the word crisp separately to refer to our product, but never did we ever say the category is pretzel crisps in the same way you would of potato chips. We always refer to our product as our brand. And so we would ask that the court reverse and find that there's not substantial evidence supporting the finding that the mark is generic. We also agree that another failure by the board was it never addressed the issue of secondary meaning had it done so, which it had done in other cases, we wouldn't have to go back down. But regrettably, I think the court will have to send us back on remand for the court then to consider whether there is in fact acquired distinction. Thank you, Mr. Bernstein. Thank you, your honor.